Nott, J.
delivered the opinion of the Court.
The motion in this, case rests on the general grounds usually taken for a new trial: to wit, that the verdict is contrary to law and evidence. It is a principle so well established, that co-partners cannot sue each other at law for any thing relating to the co-partnership concern, that it would be a waste of time to cite authorities to that effect. But if the authority of this Court is wanted, it will be found in the case of Holman and Taylor, decided early in this Term. It is contended on the part of the plaintiff, that *414 whether there was a co-partnership or not, was a fact for the consideration of the Jury; and having found for him, they have negatived that allegation. But they must have undertaken to determine the law, for the evidence is too clear to be resisted. In the plaintiff’s letter of the 6th June, 1807, he says, “ I now state you my ideas on the contemplated establishment of the Ferry at Hobcaw.” “ In the first place, we agree that reciprocity in advantages is a leading principle.” “ The buildings of every description, the negroes, &c. now in your possession, are to become joint stock at a price .we agree on, as must every species of property purchased, for the establishment, or any way requisite to the ferry. I shall exert myself in procuring the negroes, and the funds that will be required, reasonably.” From thése extracts taken literally from the plaintiff’s own letter, it is impossible to misconceive his views of the matter. On the' 8th of September following the plaintiff bought the negroes, Jack and George, and in December he also bought Dick, and sent them to the defendant pursuant to his promise in the above mentioned letter. In a letter of the 16th of May, he says he was “ sorry to be informed of the loss the establishment had experienced in the death of Dumfries, and the sickness of Dick and George. Whenever you think it necessary to procure a horse-boat, do so.” In his letter of January the 6th, 1809, his intention is equally manifest, al *415 though not so explicitly declared. In another, of the 9th April, 1810, he observes, “ You must have known my motives for uniting , with you in the establishment.” In one, of the 6th of bruary> 1811, he says, “ I hope you have the sale of the establishment in view — no doubt a sale can be effected, and the negro property a great inducement.” Here is an express declaration, that the negroes were co-partnership property, a part of which were the negroes in question.- In addition to this, Mr. Coit says, the “ negroes were put there as co-partnership property.” He also further says, the “ concern went on about two years, and then they disagreed.” After such a mass of testimony, all tending to the same point, it is difficult to conceive how a doubt could ever have existed with regard to the connexion. It appears that a written agreement was once contemplated; that one was once drawn, but never executed; the co-partnership notwithstanding took effect, and existed two years. And that circumstance instead of strengthening the plaintiff’s case, renders the interposition of the Court of Equity more peculiarly necessary. However, it is not for this Court to direct the plaintiff where his remedy lies ; it is sufficient to say, he can have no relief here. The motion to set aside the verdict must be granted.
Prioleau, for the motion.
Grimké and Richardson, contra.